UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| STEEP HILL LABORATORIES, INC, et al., | Case No. 18-cv-00373-LB |
| Plaintiffs, | |
| v. | **ORDER (1) DENYING DEFENDANT'S ANTI-SLAPP MOTION TO STRIKE COMPLAINT, (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, AND (3) DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| DAVID HAROLD MOORE, | |
| Defendant. | |
| | Re: ECF Nos. 8, 9, 31 |

## INTRODUCTION

Plaintiffs Steep Hill Laboratories, Inc. and its CEO Jmichaele Keller bring this action against David Harold Moore, a former employee of another company also owned at one point by Mr. Keller. Mr. Moore has been handing out fliers at industry trade conferences and mailing fliers to Steep Hill business contacts. The fliers accuse Mr. Keller of being, among other things, a "diagnosed sociopath" with "narcissistic personality disorder," a "proven sexual harasser" who tried to "seduce [an individual] into a three way sexual encounter during the interview process," and a "greedy demonic scumbag" who "left wife destitutte [sic] w PTSD" and "fleeced" and "robbed" his former business partner and his wife. Mr. Moore also maintains a website, where he posts claims that Mr. Keller is a "homosexual predator" who fired Mr. Moore because Mr. Moore

1  refused to have sex with him. Additionally, at a trade conference in November 2017, Mr. Moore

2  allegedly approached Mr. Keller, body-slammed him three times, and had to be physically pulled

3  off him by three people.

4      Steep Hill and Mr. Keller bring claims against Mr. Moore for (1) defamation, (2) intentional

5  interference with prospective economic relations, and (3) intentional interference with contractual

6  relations. Mr. Keller additionally brings individual claims for (4) false-light invasion of privacy,

7  (5) civil stalking, (6) breach of contract, and (7) intentional infliction of emotional distress.[1]

8      Mr. Moore moves to dismiss Mr. Keller's claims for (1) intentional interference with

9  contractual relations, (2) civil stalking, and (3) breach of contract, and moves to dismiss all of

10  Steep Hill's claims.[2] Mr. Moore also moves to strike the entire complaint under California Code of

11  Civil Procedure § 425.16, the state's Strategic Lawsuits Against Public Participation ("SLAPP")

12  law.[3] He argues that his statements are protected free speech and that the court should therefore

13  strike the entire complaint under the anti-SLAPP statute. The plaintiffs, for their part, move for a

14  preliminary injunction ordering Mr. Moore to (1) take down his website, (2) refrain from

15  distributing any type of defamatory communication about them, and (3) not go within one hundred

16  feet of Mr. Keller or Steep Hill's business.[4]

17      For the reasons set forth below, the court:

18          1.  denies Mr. Moore's anti-SLAPP motion to strike,

19          2.  grants Mr. Moore's motion to dismiss (a) Steep Hill's claim for intentional interference

20              with prospective economic relations, (b) both plaintiffs' claims for intentional

21              interference with contractual relations, (c) Mr. Keller's claim for civil stalking, and

22

23  [1] The plaintiffs originally brought their claims in California state court. Mr. Moore removed to federal
    court on the basis of diversity jurisdiction. The court has jurisdiction because this action is between a

24  Delaware corporation based in California and an individual in the Netherlands, on the one hand, and a
    Nevadan individual, on the other, and the amount in controversy exceeds $75,000. 28 U.S.C.

25  § 1332(a)(3).

26  [2] Def.'s Mot. to Dismiss – ECF No. 9. Citations refer to material in the Electronic Case File ("ECF");
    pinpoint citations are to the ECF-generated page numbers at the top of documents.

27  [3] Def.'s Mot. to Strike – ECF No. 8.

28  [4] Pls.' Mot. for Prelim. Injunction – ECF No. 31-2.

1      (d) Mr. Keller's claim for breach of contract, and denies Mr. Moore's motion to

2      dismiss Steep Hill's claim for defamation, and

3    3.   denies the plaintiffs' motion for a preliminary injunction.

## STATEMENT[5]

Defendant David Harold Moore was an employee of MeetingMatrix, a company owned at one point by plaintiff Jmichaele Keller, from 2000 to 2002.[6] In September 2002, MeetingMatrix terminated Mr. Moore.[7] Following his termination, Mr. Moore claimed that he was owed part of the ownership of MeetingMatrix and refused to return some MeetingMatrix property that he retained in his possession.[8]

In 2002, MeetingMatrix filed a lawsuit against Mr. Moore, which was ultimately settled out of court.[9] Following the settlement, MeetingMatrix and Mr. Moore entered into a General Release and Confidentiality Agreement ("Agreement").[10] Among other things, the Agreement provided that "[t]he parties agree not to make, utter, publish, reveal or otherwise disseminate any remarks disparaging, defaming, negating, or diminishing the conduct, status, nature, or character of the other party, their officers, directors, shareholders, servants, employees, agents, and/or their attorneys."[11] The Agreement also contained a liquidated damages provision that provided that "Moore agrees to use his best efforts to comply with the provisions of this Agreement. If Moore breaches this Agreement, MeetingMatrix shall be entitled to liquidated damages of sixteen thousand dollars ($16,000). The parties agree that this clause represents a reasonable estimate of the fees involved in settling this matter, which would be lost by MeetingMatrix in the event of a

---

[5] Unless otherwise noted, the fact allegations in the Statement are from the Complaint.

[6] Compl. – ECF No. 1 at 5–6 (¶ 8).

[7] *Id.* at 6 (¶ 9).

[8] *Id.*

[9] *Id.*

[10] *Id.*; Compl. Ex. A (Agreement) – ECF No 38-1.

[11] Compl. – ECF No. 1 at 6 (¶ 11); Compl. Ex. A (Agreement) – ECF No. 38-1 at 6 (¶ 4.B).

breach of this Agreement and is not a penalty."[12] (Mr. Keller was not himself a party to the Agreement.[13])

In 2015, Mr. Keller became CEO of Steep Hill.[14]

In November 2017, when Mr. Keller was attending the Marijuana Business Conference in Las Vegas on behalf of Steep Hill, Mr. Moore approached him and started yelling at him loudly, during which time a large number of people around them could hear him.[15] Mr. Moore then body-slammed Mr. Keller three times and pushed him back against an exhibit booth until three people physically pulled him off Mr. Keller.[16] While being escorted out of the conference, Mr. Moore threatened several bystanders, saying that he "will kick their fucking ass."[17]

Mr. Moore also wrote and distributed fliers about Mr. Keller and Steep Hill to various attendees at the conference.[18] Among other things, the fliers described Mr. Keller as a "diagnosed sociopath" with "narcissistic personality disorder," a "proven sexual harasser" who tried to "seduce [an individual] into a three way sexual encounter during the interview process," and a "greedy demonic scumbag" who "left wife destitutute [sic] w PTSD."[19] The fliers additionally stated, in reference to Mr. Keller, "partner jerry murdered," "Jerry's wife fleeced for $," and "minority partner robbed."[20] The fliers stated, "DO NOT TRUST STEEP HILL LABS NEW OWNER AND CEO J. MICHAEL KELLER."[21] Mr. Moore also sent these fliers to several of Steep Hill's business contacts and investors.[22]

---

[12] Compl. – ECF No. 1 at 6 (¶ 12); Compl. Ex. A (Agreement) – ECF No. 38-1 at 7 (¶ 4.D).

[13] *See* Compl. Ex. A (Agreement) – ECF No 38-1.

[14] Compl. – ECF No. 1 at 6 (¶ 14).

[15] *Id.* at 6–7 (¶ 15).

[16] *Id.*

[17] *Id.* at 7 (¶ 16).

[18] *Id.* (¶ 17).

[19] *Id.* at 7, 9 (¶¶ 17, 25–26).

[20] *Id.* at 7 (¶ 17).

[21] *Id.* at 7, 9 (¶¶ 17, 26).

[22] *Id.* at 7 (¶ 17).

The plaintiffs allege that Mr. Moore's actions have tainted their investors' perception of Mr. Keller's integrity.[23] Four of Steep Hill's current investors have requested teleconferences with Mr. Keller following Mr. Moore's attack on him, asking for an explanation of Mr. Moore's statements, fliers, and actions, and expressing concern in the context of weighing whether to invest further in Steep Hill.[24]

In addition to the fliers, Mr. Moore has also created a website that contains additional statements about Mr. Keller.[25] On his website, Mr. Moore claims that Mr. Keller is a "homosexual predator" who professed his love for Mr. Moore, sexually harassed Mr. Moore, and then fired Mr. Moore for refusing to have sex with him.[26]

Mr. Keller alleges that Mr. Moore's statements and actions have caused severe embarrassment and mental and emotional anguish, disrupted his personal life, and negatively impact Steep Hill's business and his career.[27] The plaintiffs allege that Steep Hill's business concerns have been impacted by the loss of investor confidence, which impairs their ability to seek and obtain continued financial support as the company grows.[28]

The plaintiffs assert that Mr. Moore's statements are false and unfounded.[29]

## ANALYSIS

### 1. Anti-SLAPP Motion to Strike

#### 1.1 Standard of Review

California Code of Civil Procedure § 425.16 is called the anti-SLAPP statute because it allows a defendant to gain early dismissal of claims that are designed primarily to chill the exercise of

---

[23] *Id.* at 7–8 (¶ 18).

[24] *Id.*

[25] *Id.* at 8 (¶ 19).

[26] *Id.*

[27] *Id.* (¶¶ 21–22).

[28] *Id.* (¶ 22).

[29] *Id.* at 9 (¶ 23).

First Amendment rights. *Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1568 (2005). Section

425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance
> of the person's right of petition or free speech under the United States Constitution
> or the California Constitution in connection with a public issue shall be subject to a
> special motion to strike, unless the court determines that there is a probability that
> the plaintiff will prevail on the claim.

And Section 425.16(e) provides that acts "in furtherance of" these rights include:

> (1) any written or oral statement or writing made before a legislative, executive, or
> judicial proceeding, or any other official proceeding authorized by law;

> (2) any written or oral statement or writing made in connection with an issue under
> consideration or review by a legislative, executive, or judicial body, or any other
> official proceeding authorized by law;

> (3) any written or oral statement or writing made in a place open to the public or a
> public forum in connection with an issue of public interest; or

> (4) any other conduct in furtherance of the exercise of the constitutional right of
> petition or the constitutional right of free speech in connection with a public issue
> or an issue of public interest.

California's anti-SLAPP statute applies to state claims in federal court. *Thomas v. Fry's

Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005).

In ruling on an anti-SLAPP motion, a court engages in a two-step process. *Equilon Enters. v.

Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court decides whether the defendant

has made a threshold showing that the challenged cause of action arises from acts in furtherance of

the defendant's right of petition or free speech under the United States or California constitutions

in connection with a public issue. *Id.* Second, "[i]f the court finds such a showing has been made,

it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."

*Id.* The claim is subject to dismissal only when (1) the defendant shows that the claim is based on

protected conduct and (2) the plaintiff fails to show a probability of success on that claim.

*Navellier v. Sletten*, 29 Cal. 4th 82, 88–89 (2002).

For the first part of the test, a defendant must make a prima-facie showing that the claim

"arises from" his conduct "in furtherance of" his exercise of free speech or petition rights as

defined in Section 425.16(e). *Equilon*, 29 Cal. 4th at 61. "For purposes of the anti-SLAPP statute,

a cause of action 'arises from' conduct that it is 'based on.'" *Graham-Sult v. Clainos*, 756 F.3d

724, 735 (9th Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244–45 (2013)). Thus, a court must ask what activities form the basis for each of the plaintiff's claims. *Id.* The court then must ask whether those activities are "protected" and thereby bring the claim within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1182–84 (2011)). Arguments about the merits of the plaintiff's claims or the defendant's defenses are irrelevant in the first step of the anti-SLAPP analysis: for example, in a defamation case, it does not matter whether defendant actually made the statements he or she is alleged to have made, whether the statements were true or not, or whether they were defamatory or not. *See, e.g.*, *City of Costa Mesa v. D'Alessio Inv., LLC*, 214 Cal. App. 4th 358, 371–72 (2013). The "first step only determines whether section 425.16's *procedural* protection applies" to the alleged activities in question. *Id.* at 371 (emphasis in original).

For the second part of the test, the burden then shifts to the plaintiff to establish as a matter of law that no such protection exists. *Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (2002). To establish a probability of prevailing, a plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima-facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (2006). The plaintiff also must present evidence to overcome any privilege or defense to the claim that has been raised. *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

In federal court, if an anti-SLAPP motion challenges the legal sufficiency of the plaintiff's complaint, then federal pleading standards apply, and the motion is decided under the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982–83 (C.D. Cal. 1999). By contrast, if an anti-SLAPP motion challenges the plaintiff's alleged failure of proof, the motion is decided in federal court under the same standards as a motion for summary judgment under Federal Rule of Civil Procedure 56. *Id.*; *accord Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (adopting *Rogers* standard).

In any action subject to the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. P. § 425.16(c); *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

### 1.2   "Public Issue" or "Issue of Public Interest"

As noted above, certain statements made "in connection with a public issue or an issue of public interest" are covered by the anti-SLAPP statute. Cal. Code Civ. P. § 425.16(e)(3)–(4).[30]

"The anti-SLAPP statute does not define the terms 'public issue' or 'issue of public interest.'" *Baughn v. Dep't of Forestry & Fire Prot.*, 246 Cal. App. 4th 328, 335 (2016). California courts have held, however, that there must be some attributes of the issue which make it one of public, rather than merely private, interest. A few guiding principles may be derived from decisional authorities." *Id.* (internal quotation marks omitted) (quoting *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003)):

> ". . . . First, 'public interest' does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy . . . .' Finally, 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.' A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."

*Id.* (quoting *Weinberg*, 110 Cal. App. 4th at 1132–33 (internal citations omitted)). "[I]n cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such

---

[30] The anti-SLAPP statute also covers certain statements made in connection with governmental or quasi-governmental proceedings. Cal. Code Civ. P. § 425.16(e)(1)–(2). As Mr. Moore does not claim those sections apply, *see* Def.'s Mot. to Strike – ECF No. 6, this opinion focuses on Sections 425.16(e)(3) and (4).

that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." *Du Charme v. IBEW, Local 45*, 110 Cal. App. 4th 107, 119 (2003) (emphasis in original).

"In evaluating the first prong of the anti-SLAPP statute, [courts] must focus on 'the *specific nature of the speech* rather than generalities that might be abstracted from it." *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1570 (2009) (emphasis in original) (quoting *Dyer v. Childress*, 147 Cal. App. 4th 1273, 1280 (2007)). Courts have therefore rejected attempts to re-characterize statements arising from private workplace disputes as statements on a "public issue" or an "issue of public interest" for the purpose of the anti-SLAPP statute.

For example, in *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913 (2003), an employee union published newsletters accusing a janitorial supervisor of soliciting bribes, harassing employees, and hiring and showing favoritism to his family members. *Id.* at 916–17. The supervisor sued for defamation. *Id.* at 917. The union filed an anti-SLAPP motion to strike, arguing that its statements concerned unlawful workplace activity and abusive supervision, which were matters of public interest. *Id.* at 919. The California Court of Appeal rejected that argument, holding that "unlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy." *Id.* at 924. The court held that the supervisor's conduct only affected the individuals he supervised and did not affect a large number of people beyond the direct participants. *Id.* The court held that this "[wa]s hardly a matter of public interest" and denied the union's anti-SLAPP motion. *Id.* at 924.

Similarly, in *Olaes v. Nationwide Mutual Insurance Company*, 135 Cal. App. 4th 1501 (2006), a company accused an employee of sexually harassing other employees. *Id.* at 1504. The employee sued, and the company filed an anti-SLAPP motion to strike. *Id.* The company argued that eradicating sexual harassment in the workplace was a fundamental public interest. *Id.* at 1510. The California Court of Appeal rejected this argument, holding that "although we agree the elimination of sexual harassment implicates a public interest, . . . a dispute among a small number of people in a workplace does not implicate a broader public interest subject to a motion to strike

United States District Court
Northern District of California

under section 425.16, subdivision (e)." *Id.* at 1511. The court held that the company's accusations against the employee of individual acts of sexual harassment did not bring their statements within the ambit of the anti-SLAPP statute. *Id.* at 1510–11.

Similarly, in *Trinidade v. Reach Media Group, LLC*, No. 12-CV-4759-PSG, 2013 WL 3977034 (N.D. Cal. July 31, 2013), a former contractor made posts on Facebook that the CEO of a company failed to pay him and owed him money, wired him money, and then pretended that the wire was a fraudulent transfer in order to get it reversed. *Id.* at *3. The company sued for defamation. *Id.* The contractor filed an anti-SLAPP motion to strike, arguing that he was warning people about the company's failure to pay and that the company's other potential contractors might be interested in his warnings, and hence the matter was one of public interest. *Id.* at *11. The court rejected that argument, noting that the contractor's statements did not "affect large numbers of people outside of [himself] and [the company]" and that the contractor's statements to a "relatively small, specific audience" — a Facebook group of 2244 members — failed to satisfy his burden of showing that "his statements occurred 'in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance.'" *Id.* at *10, 12–13 (quoting *Du Charme*, 110 Cal. App. 4th at 119).

Courts have also rejected attempts to re-characterize statements about companies as statements on a "public issue" or an "issue of public interest" for the purpose of the anti-SLAPP statute simply because the companies might be large or powerful. The fact that subject of a defendant's statements might be "'a large, powerful corporation' does not render all information about the company a matter of widespread public interest." *World Fin. Grp.*, 172 Cal. App. 4th at 1573. Similarly, courts have rejected attempts to re-characterize statements about companies that may be involved in a line of business that, broadly speaking, is of general public concern as statements on a "public issue" or an "issue of public interest" where the statements themselves were not about a matter of public interest. For example, in *Consumer Justice Center v. Trimedica International, Inc.*, 107 Cal. App. 4th 595 (2003), several plaintiffs sued a company that sold herbal breast-enlargement supplements, claiming that the supplements did not work. *Id.* at 599. The company

filed an anti-SLAPP motion, arguing that "herbal dietary supplements and other forms of complementary medicine are the subject of public interest." *Id.* at 601. The California Court of Appeal rejected this argument, holding that regardless of whether herbal supplements generally were a subject of public interest, the statements at issue were not about herbal supplements generally — they were about the specific properties of the company's product, which were not a matter of general public interest. *Id.* at 601. The California Court of Appeal has held that statements are not statements on a "public issue" or an "issue of public interest" for the purposes of the anti-SLAPP statute when they are "not made in the context of any public discussion," are not "directed at encouraging others to participate in the discussion," and do not "have any effect on a substantial number of people beyond those to whom the information [i]s directly conveyed." *World Fin. Grp.*, 172 Cal. App. 4th at 1572–53.

### 1.3    Application

Mr. Moore's statements here fall in the category of non-public-issue statements that are not protected by the anti-SLAPP statute. For example, his claims that Mr. Keller sexually harassed him at most relate to a private workplace dispute that is not a matter of public interest. *Cf. Olaes*, 135 Cal. App. 4th at 1510–11 (private claim of sexual harassment is not a matter of public interest). Similarly, his claims that Mr. Keller is a "greedy demonic scumbag" who supposedly left his wife destitute and fleeced his business partner and are not matters of public interest. *Cf. Rivero*, 105 Cal. App. 4th at 924 (private claim of theft and bribe-taking is not a matter of public interest). Additionally, Mr. Moore's statements have no interest beyond potentially to business partners of Mr. Keller and Steep Hill and do not encourage anyone to participate in an ongoing discussion of a matter of public significance. *Cf. Du Charme*, 110 Cal. App. 4th at 119 (where the issue is of interest to only a portion of the community, the statements must occur in the context of an ongoing dispute or discussion, "such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance") (emphasis in original); *Trinidade*, 2013 WL 3977034, at *13 (generally same).

Mr. Moore's argument that Steep Hill and Mr. Keller work in the marijuana industry and that there is an ongoing public debate about the legalization of marijuana[31] does not make his statements about them statements on matters of public interest. All of Mr. Moore's statements are attacks against Mr. Moore personally. None of his statements relates in any way to the broader debate on marijuana legalization, and thus they do not warrant anti-SLAPP protection on that basis. *Cf. Consumer Justice*, 107 Cal. App. 4th at 599 (that herbal supplements may be a matter of public interest does not render all statements about a company that sells herbal supplements statements on matters of public interest).

As Mr. Moore has failed to make a prima-facie showing as to the first step in the anti-SLAPP test, the court need not address the second step.[32] Mr. Moore's anti-SLAPP motion to strike is denied.

## 2.  Motion to Dismiss

### 2.1  Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[31] *See* Def.'s Mot. to Strike – ECF No. 8 at 3–4, 7; Def.'s Mot. to Strike Reply – ECF No. 3–4.

[32] Mr. Moore's citation to *Gallagher v. Connell*, 123 Cal. App. 4th 1260 (2004) (cited by Def.'s Mot. to Strike Reply – ECF No. 28 at 3) is inapposite. In *Gallagher*, the parties agreed that the first step of the anti-SLAPP test was met, *see id.* at 1265, and the only issue the court addressed was the second step, i.e., the merits of the plaintiff's claims. Here, Mr. Moore fails to meet the first step of the anti-SLAPP test, and hence he does not reach the second-step analysis that was the subject of *Gallagher*.

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

If a court dismisses a complaint, it must give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).


## 2.2    Defamation

### 2.2.1    Governing Law

The elements of a claim for libel and defamation under California law are (1) an intentional publication, (2) that is false, (3) defamatory, and (4) unprivileged, and (5) that has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). "Publication, which may be written or oral, is defined as a communication to some third person who understands both the defamatory meaning of the statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000) (citing *Cunningham v. Simpson*, 1 Cal. 3d 301, 306 (1969)). "If a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts, there is libel per se." *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 5 (1999). If "the defamatory meaning would appear only to readers who might be able to recognize it through some knowledge of specific facts . . . not discernable from the face of the publication," then the libel is per quod. *Id.* at 6; *see also* Cal. Civ. Code § 45a (distinguishing between "libel on its face" and "[d]efamatory language not libelous on its face").

Corporations may bring actions for defamation. *Vegod Corp. v. ABC, Inc.*, 25 Cal. 3d 763, 770 (1979). And in certain circumstances, a corporation can bring an action for defamation for statements made about a corporate officer. For example, in *Trinidade v. Reach Media Group, LLC*, a contractor made Facebook posts stating that "Roger Dowd from Reach Media Group owes me $13,000" and claiming that Mr. Dowd had failed to pay him. *Trinidade*, 2013 WL 3977034, at *3. Mr. Dowd was the CEO of Reach Media. *Id.* at *2. Reach Media sued for defamation, and the contractor argued that Reach Media could not bring a claim because his statements were only about Mr. Dowd, not the company. *Id.* at *13. The court rejected that argument, noting that the contractor mentioned Reach Media in his statements and that it reasonably could be inferred that he had been referring to Reach Media as well as Mr. Dowd. *Id.* at *13–14; *accord, e.g.*, *Powerlineman.com, LLC v. Kackson*, No. CIV. S-07-879 LKK/EFB, 2007 WL 3479562, at *6 (E.D. Cal. Nov. 15, 2007) (company could bring defamation claim against defendant who allegedly falsely stated that company's website operator stole content, because "a reasonable consumer might nevertheless construe that defendant's statement was directed toward the [company's] website as much as it was directed toward its operator.").

"California defamation law requires that the offending statement 'expressly or impliedly assert a fact that is susceptible to being proved false,' and must be able reasonably to be 'interpreted as stating actual facts.'" *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999) (citing *Weller v. ABC*, 232 Cal. App. 3d 991, 1001 (1991)). "Because defamation requires a falsehood, it is sometimes said that an opinion, which is neither true nor false, is not actionable. This is an oversimplification. Statements of opinion do not enjoy blanket protection." *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 685 (2017) (citing *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 384 (2004)). "The issue is whether the statement of opinion implies a statement of fact. 'Statements of opinion that imply a false assertion of fact are actionable.'" *Id.* (quoting *Franklin*, 116 Cal. App. 4th at 385). To determine "'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact' . . . . [courts] apply a totality of the circumstances test." *Id.* at 686 (quoting *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012)). "First, [courts] examine the language of the statement itself, to

determine whether the words are understood in a defamatory sense. Second, [courts] examine the context in which the statement was made." *Id.* (citing *Franklin*, 116 Cal. App. 4th at 385).

A plaintiff who is a "public figure" must meet an additional element to prevail on a defamation claim: he or she must establish that the defendant acted with actual malice. *Grenier v. Taylor*, 234 Cal. App. 4th 471, 483–84 (2015) (citing *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 252–53 (1984)). "There are two classes of public figures. The first is the 'all purpose' public figure who has achieved such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. The second category is that of the 'limited purpose' or 'vortex' public figure, an individual who voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 484 (internal quotation marks and brackets omitted) (quoting *Reader's Digest*, 37 Cal. 3d at 253). "Characterizing a plaintiff as a limited purpose public figure requires the presence of certain elements." *Id.* (citing *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005)). "First, there must be a public controversy about a topic that concerns a substantial number of people. In other words, the issue was publicly debated.." *Id.* (citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 25 (2007)). "Second, the plaintiff must have voluntarily acted to influence resolution of the issue of public interest. To satisfy this element, the plaintiff need only attempt to thrust himself or herself into the public eye." *Id.* (citing *Ampex*, 128 Cal. App. 4th at 1577). "Once the plaintiff places himself or herself in the spotlight on a topic of public interest, his or her private words and acts relating to that topic become fair game." *Id.* (citing *Gilbert*, 147 Cal. App. 4th at 25). "However, the alleged defamation must be germane to the plaintiff's participation in the public controversy." *Id.* (citing *Ampex*, 234 Cal. App. 4th at 1577).

### 2.2.2 Application

The only argument Mr. Moore makes in his motion to dismiss against Steep Hill's defamation claim is that his statements were directed at Mr. Keller, not Steep Hill.[33] But given that his

---

[33] Def.'s Mot. to Dismiss – ECF No. 9 at 3–4.

allegedly defamatory fliers specifically linked Mr. Keller and Steep Hill — they state, "DO NOT TRUST STEEP HILL LABS NEW OWNER AND CEO J. MICHAEL KELLER" — Steep Hill may bring a defamation claim against Mr. Moore as well. *Cf. Trinidade*, 2013 WL 3977034, at *13–14; *Powerlineman.com*, 2007 WL 3479562, at *6.

Mr. Moore makes several additional arguments against the plaintiffs' defamation claims in his motion to strike.[34] First, Mr. Moore argues that his statements are non-actionable opinions.[35] The court disagrees. Mr. Moore's accusations that Mr. Keller is, among other things, a "proven sexual harasser" and a "homosexual predator" who tried to have a three-way sexual encounter during an interview session and fired Mr. Moore for refusing to have sex with him, that Mr. Keller "left wife destitutute [sic] w PTSD," and that Mr. Keller and "fleeced" and "robbed" his business partner and his wife, are statements that a reasonable factfinder could conclude declare or imply provably false assertion of facts. Mr. Moore's other statements (e.g., that Mr. Keller is "greedy demonic scumbag") are actionable as well. Read in the context in which they appeared, those conclusions are either based on the factual accusations they accompanied — in which case, if those factual statements are actionable, so are the conclusions, *see Dickinson*, 116 Cal. App. 4th at 688 ("An opinion based on a provably false fact is itself actionable.") — or they are implicitly based on other, undisclosed facts, in which case they are actionable as well, *see id.* (defamatory opinion may be actionable when "it does not disclose all of the facts on which the opinion is based").

Second, Mr. Moore argues that Steep Hill and Mr. Keller are limited public figures because Mr. Keller is "a public figure within the community of the marijuana trafficking industry," and hence Steep Hill and Mr. Keller must plead that he acted with actual malice.[36] But even assuming that the plaintiffs are limited public figures with respect to the marijuana industry, that does not

---

[34] While Mr. Moore technically did not raise these arguments properly in the context of a motion to dismiss, because he is pro se, the court interprets his filings liberally.

[35] Def.'s Mot. to Strike – ECF No. 8 at 4, 7.

[36] Def.'s Mot. to Strike – ECF No. 8 at 4, 7–8. Mr. Moore makes no plausible argument that Steep Hill or Mr. Keller have "achieved such pervasive fame or notoriety that [they] become[] public figure[s] for all purposes and in all contexts," *Grenier*, 234 Cal. App. 4th at 484, and hence this opinion focuses only on the issue of whether they are "limited-purpose" public figures.

make them public figures with respect to all issues and all topics. Mr. Moore's statements about Mr. Keller do not relate to the marijuana industry or the plaintiffs' participation therein. His statements attack Mr. Keller on separate issues (sexual harassment and theft). Consequently, in the context of this case, Mr. Moore's argument that the plaintiffs are public figures and therefore must plead actual malice fails. *Cf. Grenier*, 234 Cal. App. 4th at 485 (fact that pastor "thrust himself into the public eye as an expert on the Bible and its teachings" by writing book, hosting radio program, and promoting himself on web site, does not make him a public figure in connection with statements accusing him of child abuse, tax evasion, or theft).

Third, Mr. Moore argues that the statements on his website were originally published in 2015, and the fliers he distributed in 2017 were re-publications of his website and therefore relate back to 2015, and hence his statements are outside the statute of limitations for defamation.[37] Mr. Moore's statute-of-limitations argument relies on matters outside the pleadings, however, and therefore is not appropriate for consideration on a motion to dismiss. *See, e.g.*, *24/7 Customer, Inc. v. 24-7 Intouch*, No. 5:14-cv-02561-EJD, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015) ("Plaintiff's complaint could only be properly dismissed [under a statute of limitations defense] if the complaint itself contained factual allegations demonstrating that Plaintiff definitively filed suit outside of the limitation period").

For the foregoing reasons, the court denies Mr. Moore's motion to dismiss Steep Hill's claim for defamation.

### 2.3   Intentional Interference with Prospective Economic Advantage

#### 2.3.1   Governing Law

To plead intentional inference with prospective economic advantage, a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship;

---

[37] Def.'s Mot. to Strike – ECF No. 8 at 8; Def.'s Mot. to Strike Reply – ECF No. 28 at 6–7.

(3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual

disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the

acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)

(quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996)).

"The law precludes recovery for overly speculative expectancies by initially requiring proof the

business relationship contained the *probability* of future economic benefit to the plaintiff."

*Westside Ctr.*, 42 Cal. App. 4th at 522 (emphasis in original, citations omitted). "[T]he

interference tort applies to interference with *existing* noncontractual relations which hold the

promise of future economic advantage. In other words, it protects the expectation that the

relationship eventually will yield the desired benefit, not necessarily the more speculative

expectation that a potentially beneficial relationship will eventually arise." *Id.* at 524 (emphasis in

original).

### 2.3.2    Application

The plaintiffs have not pleaded any actual disruption of economic relationships with third

parties and therefore have failed to plead the elements of this claim. The plaintiffs allege that four

of their investors requested teleconferences with Mr. Keller asking for an explanation of Mr.

Moore's statements, but they do not allege that there was any disruption in their relationship with

any of these investors. Additionally, the plaintiffs allege that Mr. Moore's statements caused them

to lose business and potential investor opportunities, but these allegations are "speculative

expectation[s] that a potentially beneficial relationship will eventually arise" and not allegations of

interference with "*existing* noncontractual relations which hold the promise of future economic

advantage." *Cf. Westside Ctr.*, 42 Cal. App. 4th at 522, 524 (emphasis in original). Consequently,

the court grants Mr. Moore's motion to dismiss Steep Hill's claim for intentional interference with

prospective economic advantage.[38]

---

[38] As Mr. Moore technically did not move to dismiss Mr. Keller's claim for intentional interference with prospective economic advantage, only Steep Hill's, *see* Def.'s Mot. to Dismiss – ECF No. 9 at 1, the court does not dismiss that claim, but it notes that Mr. Keller's claim appears to suffer from the same deficiencies as Steep Hill's.

### 2.4    Intentional Interference with Contractual Relations

#### 2.4.1    Governing Law

To plead intentional interference with contractual relations, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

#### 2.4.2    Application

The plaintiffs' allegations here suffer from similar deficiencies as their claims for intentional interference with prospective economic advantage: they do not allege an actual breach or disruption of any contractual relationship. The court therefore grants Mr. Moore's motion to dismiss these claims.

### 2.5    Stalking

#### 2.5.1    Governing Law

California Civil Code § 1708.7 states, in relevant part:

> (a) A person is liable for the tort of stalking when the plaintiff proves all of the following elements of the tort:

> (1) The defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff. In order to establish this element, the plaintiff shall be required to support his or her allegations with independent corroborating evidence.

> . . . .

> (3) One of the following:

> (A) The defendant, as a part of the pattern of conduct specified in paragraph (1), made a credible threat . . . .

> . . . .

(b) For the purposes of this section:

. . . .

(2) "Credible threat" means a verbal or written threat, including that communicated by means of an electronic communication device, or a threat implied by a pattern of conduct, including, but not limited to, acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means, follows, harasses, monitors, surveils, threatens, or interferes with or damages the plaintiff's property, or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent and apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.

"[Courts] ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 222 (1999) (citing cases). "Accordingly, [courts] do not construe a statute as regulating occurrences outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute." *Id.* (citing *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1058–59 (1999)).

### 2.5.2 Application

Mr. Moore argues, and Mr. Keller does not meaningfully rebut,[39] that Mr. Moore's alleged assault of Mr. Keller in Nevada cannot constitute civil stalking under California Civil Code § 1708.7, as it occurred outside California and hence outside the reach of the California Civil Code. Setting aside the assault in Nevada, Mr. Keller does not plead that Mr. Moore made a credible threat against him, as required by Section 1708.7(a)(3)(A) — Mr. Keller alleges that Mr. Moore's statements against him are "false and unfounded [and] outrageous," but he does not allege that they were threats.[40] The court therefore grants Mr. Moore's motion to dismiss this claim.

---

[39] *See* Pls.' Mot. to Dismiss Opp'n – ECF No. 21 at 12.

[40] *See* Compl. – ECF No. 12 (¶¶ 44–47).

### 2.6 Breach of Contract

#### 2.6.1 Governing Law

Mr. Moore argues that Mr. Keller cannot bring a breach of contract claim for breach of the Agreement because Mr. Keller is not a party to the Agreement.[41] Mr. Keller argues that he can sustain a claim because he is a third-party beneficiary to the Agreement.[42] The Agreement states that it "shall be construed and enforced under Nevada law."[43] The court therefore looks to Nevada law on contractual third-party beneficiaries.

Under Nevada law, "[t]o obtain status as a third party beneficiary, 'there must clearly appear a promissory intent to benefit the third party, and ultimately it must be shown that the third party's reliance thereon is foreseeable.'" *WuMAC, Inc. v. Eagle Canyon Leasing, Inc.*, No. 2:12-cv-0926-LRH-VCF, 2015 WL 995095, at *7 (D. Nev. Mar. 5, 2015) (quoting *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824–25 (Nev. 1977)). "In order for an entity to be a third party beneficiary, the underlying agreement must be made for that entity's benefit." *Id.* (citing *Olsen v. Iacometti*, 533 P.2d 1360, 1363 (Nev. 1975)). "The fact that he might incidentally benefit by the performance of the agreement is insufficient." *Id.* (citing *Olsen*, 533 P.2d at 1363). "Whether an individual is an intended third-party beneficiary turns on the parties' intent, 'gleaned from reading the contract as a whole in light of circumstances under which it is entered.'" *Id.* (quoting *Wright v. Incline Village Gen. Improvement Dist.*, 597 F. Supp. 2d 1191, 1205 (D. Nev. 2009)).

#### 2.6.2 Application

Reading the Agreement as a whole in light of the circumstances under which it was entered — namely, to resolve and settle a litigation between Mr. Moore and MeetingMatrix to which Mr. Keller was not a party[44] — it does not clearly appear that the parties intended to benefit Mr. Keller or that Mr. Keller's reliance on any such benefit would be foreseeable. It does not appear that the

---

[41] Def.'s Mot. to Dismiss – ECF No. 9 at 5; Def.'s Mot. to Dismiss Reply – ECF No. 27 at 3.

[42] Pls.' Mot. to Dismiss Opp'n – ECF No. 21 at 12.

[43] Compl. Ex. A (Agreement) – ECF No 38-1 at 8 (¶ 5.I)

[44] *See* Compl. Ex. A (Notice of Dismissal) – ECF No. 38-1 at 3.

Agreement was made for the benefit of MeetingMatrix's employees, as opposed to for the benefit of MeetingMatrix (and its employees only as incidental to MeetingMatrix itself). *Cf. WuMAC*, 2015 WL 995095, at *7 ("In order for an entity to be a third party beneficiary, the underlying agreement must be made for that entity's benefit."). Among other things, the Agreement states that if Mr. Moore breaches, MeetingMatrix shall be entitled to $16,000 in liquidated damages, but it makes no provision for MeetingMatrix employees.[45] Mr. Keller is nevertheless invoking that provision and claiming that Mr. Moore owes him at least $16,000 in liquidated damages.[46] Under Mr. Keller's interpretation of the Agreement, any and every MeetingMatrix employee who alleges that Mr. Moore breached the Agreement to his or her detriment could likewise sue Mr. Moore for $16,000 in liquidated damages. It does not clearly appear that MeetingMatrix and Mr. Moore intended to benefit MeetingMatrix employees in this way.

Absent a clear intent that the Agreement was intended to benefit Mr. Keller and that his reliance on any such benefit would be foreseeable, Mr. Keller is, at best, only an incidental beneficiary of the Agreement and cannot sue to enforce it. The court therefore grants Mr. Moore's motion to dismiss this claim.

### 3. Preliminary Injunction

#### 3.1 Standard of Review

"A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Additionally, where the plaintiff has satisfied the second, third, and fourth factors, the first factor is also satisfied if the plaintiff has raised "at least serious questions on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A preliminary injunction is "an

---

[45] Compl. Ex. A (Agreement) – ECF No 38-1 at 7 (¶ 5.D).

[46] Compl. – ECF No. 1 at 13–14 ([second] ¶¶ 5, 10)

1   extraordinary remedy that may be awarded only upon a clear showing that plaintiff is entitled to

2   such relief." *Winter*, 555 U.S. at 22.

3       Additionally, a motion for a preliminary injunction that restricts a defendant's speech — a

4   "prior restraint" — is subject to heightened scrutiny. "The term prior restraint is used to describe

5   administrative and judicial orders forbidding certain communications when issued in advance of

6   the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550

7   (1993) (emphasis, citation, and quotation marks omitted). "Temporary restraining orders and

8   permanent injunctions — i.e., court orders that actually forbid speech activities — are classic

9   examples of prior restraints." *Id.* (citation omitted). "[P]rior restraints on speech and publication

10  are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press*

11  *Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "There is a heavy presumption against prior restraints

12  on speech, and they are subject to the strict scrutiny standard of review." *Dan Farr Prods. v. U.S.*

13  *Dist. Ct. (In re Dan Farr Prods.)*, 874 F.3d 590, 593 n.2 (9th Cir. 2017). A prior restraint "may be

14  upheld only if . . . (1) the activity restrained poses either a clear and present danger or a serious

15  and imminent threat to a protected competing interest, (2) the [injunction] is narrowly drawn, and

16  (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th

17  Cir. 1985) (citations omitted).

18

19  ### 3.2   Application

20      In their motion for a preliminary injunction, the plaintiffs first request that the court order Mr.

21  Moore to take down his website and refrain from distributing any type of defamatory

22  communication about them.[47] These are classic prior restraints that seek to limit Mr. Moore's

23  speech, and the plaintiffs have not met the strict-scrutiny standard necessary for a prior restraint.

24  The fact that the plaintiffs have limited at least part of their request that the court enjoin Mr.

25  Moore to "defamatory" statements does not help them: "[w]here there has been no trial and no

26

27  ---

    [47] Pls.' Mot. for Prelim. Injunction – ECF No. 31-2 at 3.

28

1    determination on the merits that there is actionable defamation, . . . the court cannot prohibit a

2    party from making statements characterized only as 'false and defamatory.'" *Elec. Frontier*

3    *Found. v. Global Equity Mgmt. (SA) Pty. Ltd.*, __ F. Supp. 3d __, No. 17-cv-02053-JST, 2017 WL

4    5525835, at *12 n.10 (N.D. Cal. Nov. 17, 2017) (internal quotation marks omitted) (quoting *Evans*

5    *v. Evans*, 162 Cal. App. 4th 1157, 1169 (2008)).[48]

6        The plaintiffs then request that the court order Mr. Moore not to go within one hundred feet of

7    Mr. Keller or Steep Hill's business.[49] But the plaintiffs have not met the standard for a preliminary

8    injunction with respect to this request. Among other things, the plaintiffs have not established that

9    they are likely to suffer irreparable harm. "[S]peculative injury does not constitute irreparable

10    injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than

11    merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

12    immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac.*

13    *Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis in original) (quoting *Caribbean*

14    *Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). The plaintiffs have failed to

15    demonstrate how they would suffer non-speculative irreparable harm in the absence of an order

16    enjoining Mr. Moore from going within one hundred feet of Mr. Keller or Steep Hill's business

17    (particularly given that Mr. Moore is located in a different state or country than either of the

18    plaintiffs).

19

20

21

22

---

23    [48] The plaintiffs cite two cases in which courts issued prior restraints, but both are inapposite.
24    *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228
      (2005) involved disclosures of an individual's home address accompanied by what the court found
25    were "true threats" of violence. *See id.* at 1249–57. *Evilsizor v. Sweeney*, 237 Cal. App. 4th 1416
      (2015) was a divorce case in which a husband had downloaded his wife's private text messages
26    (including text messages to her attorney) without her consent and had rerouted her emails to his
      account and threatened to publicly disclose her texts and emails for leverage in the divorce
27    proceedings. *Id.* at 1421. Nothing similar is alleged here.

      [49] Pls.' Mot. for Prelim. Injunction – ECF No. 31-2 at 3.
28

## CONCLUSION

The court denies Mr. Moore's anti-SLAPP motion to strike.

The court grants Mr. Moore's motion to dismiss (1) Steep Hill's claim for intentional interference with prospective economic relations, (2) both plaintiffs' claims for intentional interference with contractual relations, (3) Mr. Keller's claim for civil stalking, and (4) Mr. Keller's claim for breach of contract. These dismissals are without prejudice, and the plaintiffs may file an amended complaint within fourteen days of the date of this order. (If the plaintiffs file an amended complaint, they must also file a blackline of their amended complaint against their original complaint as an attachment.) The court denies Mr. Moore's motion to dismiss Steep Hill's claim for defamation.

The court denies the plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: March 8, 2018

_____
LAUREL BEELER
United States Magistrate Judge